IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AUDREY WADSWORTH, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) No. 17 C 8167 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| KROSS, LIEBERMAN & STONE, INC., | ) |
| | ) |
| *Defendant.* | ) |

## ORDER

In this Fair Debt Collection Practices Act (FDCPA) case, the parties both moved for summary judgment, contesting whether a signing bonus that one must reimburse her former employer for constitutes a "debt" under the Act. As far as the Court can tell, this is an issue of first impression in this Circuit and nationwide. A plain reading of the Act, though, shows that a signing bonus is a type of debt and therefore Kross, Lieberman & Stone, Inc. ("Kross") had to comply with the applicable disclosure requirements. Accordingly, the Court denies Kross's motion (Dkt. 28) and grants Audrey Wadsworth's (Dkt. 25), entering judgment as a matter of law in her favor.

Except where otherwise noted, the following facts are undisputed, and the record supports them. In September 2016, Wadsworth accepted an employment offer from PRA Health Sciences, Inc. (PRA) to work as a study manager, tasking her with developing clinical trials in the pharmaceutical industry. (Dkt. 33 ¶¶ 1, 3.) As a part of the deal, PRA agreed to pay Wadsworth a signing bonus over the course of two installments of $3,750 each. *Id.* ¶ 1. It was not without its caveat, however: if Wadsworth left PRA's employ voluntarily or PRA terminated her for cause less than eighteen months after receipt of the second installment, Wadsworth agreed to reimburse PRA for the entire amount of the signing bonus. *Id.* ¶ 2 (quoting Ex. B). In her employment contract, Wadsworth additionally agreed to "promptly reimburse PRA for any amounts that may be owed" by her to PRA. *Id.* ¶ 5 (quoting Ex. C).

About a year later, PRA terminated Wadsworth because of a "workload reduction" and asserted its entitlement to repayment of the bonus. *Id.* ¶ 6. PRA admits

that Wadsworth immediately owed it the debt.[1]  *Id.* ¶¶ 8, 23.  Within a week, PRA referred the debt to Kross, a debt collector, for recovery.  *Id.* ¶¶ 9–12, 22, 24.  Under Kross's contract with PRA, it was responsible for collecting any outstanding balances on delinquent accounts.  *Id.* ¶¶ 10, 12.  Kross began its process the day after an employee's termination.  *Id.* ¶ 12.  Therefore, on or about September 19, 2017, Kross sent Wadsworth a collection letter, which disclosed the amount due, informed her that it was a debt collector, and also that the letter was its first attempt to collect.  *Id.* ¶ 15 (quoting Ex. D), ¶ 16.

Kross admits that it did not abide by the FDCPA.  Namely, in the five days after its initial communication, Kross failed to provide Wadsworth with a statement that indicated she had 30 days to dispute the debt's validity if she did not want Kross to assume its validity.  *Id.* ¶ 17; Dkt. 29 ¶ 13.  Then, on or about September 25, September 28, October 3, and October 4, a Kross representative called Wadsworth but neglected to advise her that the representative worked at Kross—a debt collector—and was calling from there to collect a debt.[2]  (Dkt. 33 ¶¶ 18–20; Dkt. 29 ¶ 14.)

Because of these alleged FDCPA violations, Wadsworth sued Kross in federal court in November 2017.  (Dkt. 1.)  The parties do not genuinely dispute the foregoing material facts, making this case appropriate for summary judgment.  *See* Fed. R. Civ. P. 56(a). Instead, the parties disagree on the legal significance of these facts, and the Court's resolution of this case will therefore entitle one of the cross-movants to judgment as a matter of law.  *See id.*

On the merits, then, the FDCPA provides that "[t]he term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . ." 15 U.S.C. § 1692a(5).  Here, the parties litigate the threshold question of whether the Act applies in these circumstances, which turns on whether the signing bonus is a debt within the meaning of § 1692a(5).  If it is, then the FDCPA covers it and that entitles Wadsworth to summary judgment.

In *Franklin v. Parking Revenue Recovery Servs., Inc.*, the Seventh Circuit reiterated that the term transaction is "'a broad reference to many different types of business dealings between parties.'"  832 F.3d 741, 744 (7th Cir. 2016) (quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1325 (7th Cir. 1997)).  The Court also harped on the fact that "the 'arising out of' language limits the FDCPA's reach to only those obligations that are created by *contracts* the parties used to give legal force to their transaction."  *Id.* (citing *Bass*, 111 F.3d at 1326) (emphasis

---

[1] The parties do genuinely dispute whether Wadsworth's debt was ever in default, however that is a question of law that goes to the heart of this case. Dkt. 37 ¶¶ 29, 34.

[2] In situations like this one, when Kross does not satisfy its obligations under the Act, its success rate is approximately 20% higher than when it does follow the law.  Dkt. 33 ¶ 26.

in original). Indeed, "[t]he crucial question is the legal source of the obligation[s]," and if the "obligations arise out of contract law, they are debts covered by the FDCPA." *Id.* Here, there is no question that the parties used a contract to give legal force to their transaction, or in other words, create the obligation. (Dkt. 33 ¶¶ 1–5.) The FDCPA, then, would seem to regulate Kross's attempts to collect Wadsworth's debt.

Delving deeper, and into a case where an employee owed their former employer money upon termination, the district court held that a separate loan from the company used for personal purposes qualified as a debt under the FDCPA. *See, e.g.*, *Thompson v. Diversified Adjustment Service, Inc.*, No. 12-922, 2013 WL 3973976 (S.D. Tex. July 31, 2013). In its later consideration of that decision, the Eleventh Circuit implied that if a plaintiff comes forward with evidence showing her former employer loaned her money, then that would be enough to bring the debt within the FDCPA's ambit. *See Surber v. McCarthy, Burgess & Wolff, Inc.*, 634 F. App'x 292, 295 n.3 (11th Cir. 2015). In this case, the signing bonus in many ways resembles an employer-to-employee loan, or even a salary advance. For that reason, both *Thompson* and *Surber* are analogous and persuasive.

When classifying a loan, courts "elevate[ ] substance over form" because "'neither the lender's motives nor the fashion in which the loan is memorialized are dispositive of this inquiry.'" *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001) (internal citation omitted). Courts therefore "'look to the *substance* of the transaction and the borrower's purpose in obtaining the loan, rather than the form alone.'" *Id.* (internal citation omitted) (emphasis in original). The FDCPA applies on its face to consensual consumer transactions. *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Wadsworth's signing bonus plainly qualifies.

Considering the parties' whole transaction, Wadsworth consented to provide a personal service—the development of pharmaceutical trials—in exchange for compensation, denominated as an annual salary and a signing bonus payable in two installments. She presumably worked to support herself and her family, stating that she used the funds to pay medical bills and household expenses. Dkt. 33 ¶ 4.; *see, e.g.*, *Heejon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 680–81 (D. Haw. 2017); *see also Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) (distinguishing personal from commercial borrowing in the FDCPA context) (citations omitted).

Because Wadsworth left PRA's employ within eighteen months of receiving the second installment, her contract obliged her to pay the money from the signing bonus back to PRA. *Cf. Bass*, 111 F.3d at 1325 ("As long as the transaction creates an obligation to pay, a debt is created."). It follows, then, that a signing bonus qualifies as an "obligation of a consumer to pay money arising out of a transaction" and the "money . . . which [is] the subject of the transaction [is] primarily for personal, family,

or household purposes." *See Berman v. GC Servs. Ltd. P'ship*, 146 F.3d 482, 484 (7th Cir. 1998).

Whether the debt sought to be collected is in fact owed is entirely beside the point. *See Loja v. Main St. Acquisition Corp.*, 906 F.3d 680, 684 (7th Cir. 2018) (citing *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 538 (7th Cir. 2003)); *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012). Kross tries to get around this by arguing that the debt "was not in default at the time it was obtained . . ." 15 U.S.C. § 1692a(6)(F)(iii); *see Carter v. AMC, LLC*, 645 F.3d 840, 843 (7th Cir. 2011). If Kross is right, then it is not a statutory debt collector and it has free rein to seek to collect debts like Wadsworth's. The truth is that, as a factual matter, Kross *is* a debt collector. Dkt. 33 ¶¶ 9–12, 22, 24; *see* 15 U.S.C. § 1692a(6). Notwithstanding that, Kross must fit into one of the Act's categories. *See Bridge*, 681 F.3d at 359.

"The FDCPA distinguishes between debt collectors, who are subject to the statute's requirements, and creditors, who are not. 'For purposes of applying the Act to a particular debt, these two categories . . . are mutually exclusive.'" *Ruth v. Triumph Partnerships*, 577 F.3d 790, 796 (7th Cir. 2009) (quoting *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003)); *see Bridge*, 681 F.3d at 359. As an initial matter, Kross is not a creditor because it is not in the business of loaning people money.

Moreover, the reason Congress decided to treat these types of entities differently is because creditors are generally restrained "'by the desire to protect their good will when collecting past due accounts,'" so the Act need not further impose on them. *Id.* at 797 (internal citations and quotations omitted); *see also Johnson v. Carrington Mortg. Servs.*, 638 F. App'x 523, 525 (7th Cir. 2016). That is why "the Act is aimed at debt collectors, who may have 'no future contact with the consumer and often are unconcerned with the consumer's opinion of them.'" *Ruth*, 577 F.3d at 796. Here, unlike PRA (the originator) or a servicer of a non-defaulted debt, Kross "has no ongoing relationship with the debtor and, therefore, no incentive to engender good will by treating the debtor with honesty and respect." *Id.*

Heeding the Act's purpose, then, Congress meant it to apply in this instance. But because Kross did not originate the debt and instead collected it for PRA, the debt's status under the Act "turns on whether the debt was in default at the time it was acquired." *Id.* at 796 (citations omitted); *see Carter*, 645 F.3d at 844 ("A servicing agent 'obtains' a debt in the sense that it acquires the authority to collect the money on behalf of another.").

In this case, the record does not contain a timeline that dictates whether the debt is current or in default. In fact, all the documents say is that Wadsworth agreed to "promptly" reimburse PRA. (Dkt. 33 ¶¶ 2–3.) PRA conceded that it immediately asserted its right to reimbursement because Wadsworth owed it the debt straight

away; within a week, PRA referred the delinquent account to Kross. *Id.* ¶¶ 6, 8–12, 22–24. Wadsworth failed to pay PRA, so of course she was in default. Kross's contrary position begs the question: if Wadsworth was not in default then (in FDCPA terms, that is), when would she be?

A better course is the one Wadsworth charted, wherein she contended that "[a] debt that becomes immediately due in full upon the occurrence of an event . . . can never be current; it can only be owed or not owed. Such debts are in default upon creation because there is no purpose to permit any 'grace period' . . . to return an account to good standing." (Dkt. 38 at 3.)

Even assuming the debt was not in default, Kross "treated the debt as if it were in default at the time of acquisition." *Bridge*, 681 F.3d at 362. As the Sixth Circuit explained:

> It matters not whether such treatment was due to a clerical mistake, other error, or intention. Thus, a FDCPA defendant cannot escape coverage under the Act by asserting to the court that the debt was not actually in default, despite having dunned [the] plaintiff[ ] for months or years in the face of [the] plaintiff[']s[ ] pleas or proof that the collector has made some error. A defendant may not retroactively change the status of the plaintiff it has pursued as an alleged debtor. To hold otherwise would defy the clear congressional mandate [the court] is charged with upholding.

*Id.* at 362–63. PRA hired a third party, self-identified debt collector to pursue a debt. The only reason Kross acquired the debt was for collection. Logically speaking, the debt was in default, and therefore Kross is a debt collector *that acted as a debt collector* under 15 U.S.C. § 1692a(6)(F)(iii). *See Schlosser*, 323 F.3d at 536. Kross's (or PRA's) belief that the debt was not in default is irrelevant.

When all is said and done, Wadsworth is an individual, not a commercial entity, so she is more likely to be unsophisticated about debt collection and thus fall for dirty tricks. *See McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d at 875. Congress intended for the FDCPA to protect people like her, which is why it expansively defined debt. With that directive in mind, the Court refuses to adopt Kross's highly technical reading of the Act to rob Wadsworth of its safeguards.

Accordingly, the Court denies Kross's motion for summary judgment (Dkt. 28) and grants Wadsworth's (Dkt. 25), entering judgment as a matter of law in her favor. This ruling entitles Wadsworth to a $1,000 statutory damages award and leave to petition the Court for attorneys' fees and costs under the Act. *See* 15 U.S.C. § 1692k(a)(2)–(3). Plaintiff shall file her fee petition on or before 2/15/2019. Defendant shall file any objections to the fee petition on or before 3/1/2019.

_____
Virginia M. Kendall
United States District Judge

Date: February 1, 2019